## Appeal of RAYMOND R. GOODLATTE.

Docket No. 4007.    Submitted July 14, 1925.    Decided June 21, 1926.

> On the facts, *held*, that the taxpayer was a member of the partnership of T. R. Goodlatte & Sons until April 1, 1920, but that his partnership interest during the first three months of that year was only his percentage of the quarterly profits which the partners termed "deferred salary."

*Chester A. Gwinn, Esq.*, for the petitioner.
*B. G. Simpich, Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

#### FINDINGS OF FACT.

The taxpayer is a resident of Warwick, N. Y.

The partnership of T. R. Goodlatte & Sons was engaged in the business of manufacturing oil cloth in Delawanna, N. J., and was composed of the taxpayer, his brother Robert K., and their father, Thomas R. Goodlatte, each having a one-third interest. The partnership agreement was not in writing.

In the summer of 1919 the partnership was approached by the DuPont interests and a tentative offer was made to buy the business at $1,000,000, subject to a physical appraisal and an audit of the books. Since the taxpayer desired to sell but the other two partners did not, they felt it was but fair to him to purchase his interest. Discussions continued among the three partners with reference to the price to be paid. In the fall of 1919 it was agreed to pay the taxpayer $200,000 for his interest, payable $50,000 in cash, $50,000 in Liberty bonds, and the balance of $100,000 in notes payable over a period of ten years, and to terminate the partnership by the withdrawal of the taxpayer as of December 31, 1919.

Later in 1919 the father decided that he wished to make a trip to Europe prior to the taxpayer's withdrawal, in order to visit his sister who was ill, and his daughter. The taxpayer attended to the sales end of the business and his brother to the factory end. The taxpayer agreed to continue with the business until the father's return, which was expected to occur about April 1, 1920.

Under date of December 5, 1919, the following agreement was executed by the three partners:

Agreement made this fifth day of December, 1919, by and between Raymond R. Goodlatte, of the City of Passaic, Passaic County, New Jersey, party of the first part, and Thomas R. Goodlatte, and Robert K. Goodlatte, of the City of Passaic, Passaic County, New Jersey, party of the second part;

Witnesseth: Whereas the partnership of T. R. Goodlatte & Sons is made up of the above-named parties and the said Raymond R. Goodlatte desires to withdraw from the partnership from and after April 1st, 1920.

Now therefore, in consideration of One Dollar and of the mutual covenants hereof, the said party of the first part for himself, his executors and administrators, does hereby covenant and agree with the party of the second part and their heirs, executors and administrators, that on or about April 1st, 1920, he will enter into an agreement with the party of the second part whereby he will sell and convey to them all of his right, title and interest in and to the said partnership and in and to all of the assets thereof, including the good-will and undivided profits, subject, however, to all of the existing indebtedness and obligations of the partnership, for the price or sum of $200,000.00, Two Hundred Thousand Dollars, which the party of the second part agrees to pay and the party of the first part agrees to receive in the following manner:

$100,000.00 in cash upon the signing of that agreement and the balance, $100,000.00 in installments of not less than $10,000 per annum, with interest on unpaid balances to be computed and paid semi-annually; the party of the second part having the option at any time during the life of that contract to pay the entire balance of the purchase price at any time remaining due and unpaid with accrued interest.

It is further understood and agreed that in and by the said contract the party of the second part shall agree to fully indemnify and save harmless the said Raymond R. Goodlatte and his heirs, executors and administrators from all debts and obligations of the partnership, past, present or future, and the obligation of the party of the second part under the said contract of purchase shall be deemed and taken to be an obligation of the partnership, to remain until fully discharged a lien upon the assets of the partnership.

Subsequent to this agreement, and prior to the close of 1919, no additional oral or written agreement was entered into. No agreement was executed on or about April 1, 1920.

Prior to January 1, 1920, it was the practice of the partners to draw fixed salaries and a bonus or so-called "deferred salary", both of which were credited quarterly with the then closing of the books. The "deferred salary" consisted of a percentage of the quarterly profits according to the books, the percentage varying with the three individuals. There was a credit balance in that account in the taxpayer's favor on January 1, 1920, of $28,823.93. During the period from January 1, 1920, to April 1, 1920, the taxpayer was credited with further items totaling $7,563.82. He drew on his account as follows:

| | |
|---|---|
| Jan. 2 | $600.00 |
| Jan. 7 | 3,750.00 |
| Feb. 3 | 600.00 |
| Mar. 2 | 600.00 |
| Mar. 17 | 519.16 |
| Mar. 31 | 6,143.18 |
| Total | 12,212.34 |

The amount of $200,000 was actually paid to the taxpayer for his interest in the partnership as follows:

| | |
|---|---|
| By check March 27, 1920 | $35,000.00 |
| "      "      " 30, 1920 | 10,000.00 |
| "      "      " 31, 1920 | 4,626.94 |
| Liberty Bonds June 26, 1920 | 50,373.06 |
| Stock in a corporation to which the partnership assets were transferred January 1, 1921 | 100,000.00 |
| Total | 200,000.00 |

The profit and loss account of the partnership showed profits in 1920 for the periods as follows:

| | |
|---|---|
| April 1 | $91,699.11 |
| July 1 | 48,485.35 |
| Sept. 1 | 25,189.79 |

For the entire calendar year 1920 the partnership sustained an operating loss of about $158,000. The profit shown on the books as of April 1st was not credited to the partners.

The Commissioner treated the taxpayer on the basis of being a partner up to April 1, 1920, and included in his income for 1920 one-third of the book profit from January 1, 1920, to April 1, 1920, ($91,699.11) in the amount of $30,566.37.

### OPINION.

MORRIS: The taxpayer contends that he withdrew from the partnership on December 31, 1919; that he thereafter continued to perform service as an employee until April 1, 1920, although his compensation received during that period was upon the same basis as that received as a partner prior to January 1, 1920; and that the postponement of payment for his partnership interest until April 1, 1920, was solely as a matter of convenience for his father, and not evidence of the dissolution as of that date. He contends further, that if the dissolution did not occur on December 31, 1919, then it did not take place until the final payment of the purchase price by the delivery of $100,000 of stock in the corporation on January 1, 1921, which would entitle him to the full benefit of the loss sustained in the operation of the business during the calendar year 1920.

We can find no evidence, however, supporting the claim that the dissolution occurred on January 1, 1921. It occurred either on

December 31, 1919 or on April 1, 1920. The original partnership agreement of the three individuals was not reduced to writing and the provisions thereof were not testified to at the hearing. That a partner may withdraw from a partnership, which is not definite in duration, at any time that he sees fit, is well settled. *Karrick* v. *Hannaman*, 168 U. S. 328; *Davis* v. *Megroz*, 55 N. J. L. 427; 26 Atl. 1009. Under the oral agreement entered into in the fall of 1919, it was undoubtedly the intention of the partners that the taxpayer would withdraw from the partnership as of December 31, 1919, but under date of December 5, 1919, a definite written agreement was executed, wherein he expressed the desire to withdraw on April 1, 1920, at which time he would enter into an agreement for the sale of his interest. This written agreement is in direct conflict with the previous oral understanding and the present contention of the taxpayer that he withdrew from the partnership on December 31, 1919. The taxpayer contends that the written contract is merely an agreement to enter into a subsequent agreement to withdraw, and, as no such action was taken, it should be disregarded unless it be held that the withdrawal took place January 1, 1921. We can agree that the contract was not a sale of the partnership interest, but the subsequent events indicate to our minds that the sale and withdrawal of the taxpayer actually took place at the time designated therein without the execution of a formal agreement. He participated in the profits during the three months of 1920 to the extent of the so-called bonus; he drew nothing after April 1, 1920; and he received his first partial payment, on acount of his $200,000 selling price for his interest, on March 27, 1920, which was followed by additional payments during the next four days.

In holding that the taxpayer was a member of the partnership until April 1, 1920, the question arises whether, by the contract of December 5, 1919, and the facts in connection with the liquidation of his interest, the proportionate shares in the partnership earnings were not varied for the three months of 1920 from the equal division existing prior thereto. Under the terms of the written agreement, the taxpayer was to receive $200,000 for his interest, which amount was arrived at not only prior to the closing of the books at the time of his withdrawal, but before an estimate could even be made of the profits which would accrue to the partnership as of April 1, 1920. As it seemed to be the practice of the partners to leave the major part of the profits in the business, this provision of the contract indicates an agreement among the partners for a reapportionment of the partnership profits for the first three months of 1920, which is to our minds definitely established by the subsequent events. Although there was a book profit of $91,699.11 at the time of the taxpayer's withdrawal, he did not receive, nor was he credited with, any por-

tion thereof. When the partnership assets were transferred to the corporation, final payment of the contract price was made to him through the issuance of stock without any adjustments being made for the losses sustained by the partnership during the calendar year 1920. His only participation in the profits of the partnership for the first three months of 1920 was a percentage of the quarterly profits which the partners termed "deferred salary." From these facts we are led to the conclusion that such percentage represented his entire interest in the partnership during such period, and that the Commissioner was in error in including in his income one-third of the book profit from January 1, 1920 to April 1, 1920.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*