*167 OPINION.
MoRRis:
The taxpayer contends that he withdrew from the partnership oh December 31, 1919; 'that he thereafter continued to perform service as an employee until April 1, 1920, although his compensation received during that period was upon the same basis as that received as a partner prior to January 1, 1920; and that the postponement of payment for his partnership interest until April 1, 1920, was solely as a matter of convenience for his father, and not evidence of the dissolution as of that date. He contends further, that if the dissolution did not occur on December 31, 1919, then it did not take place until the final payment of the purchase price by the delivery of $100,000 of stock in the corporation on January 1, 1921, which would entitle him to the full benefit of the loss sustained in the operation of the business during the calendar year 1920.
We can find no evidence, however, supporting the claim that the dissolution occurred on January 1, 1921. It occurred either on *168 December 31, 1919 or on April 1, 1920. The original partnership agreement of the three individuals was not reduced to writing and the provisions thereof were not testified to at the hearing. That a partner may withdraw from a partnership, which is not definite in duration, at any time that he sees .fit, is well settled. Karrick v. Hannaman, 168 U. S. 328; Davis v. Megroz, 55 N. J. L. 427; 26 Atl. 1009. Under the oral agreement entered into in the fall of 1919, it was undoubtedly the intention of the partners that the taxpayer would withdraw from the partnership as of December 31, 1919, but under date of December 5, 1919, a definite written agreement was executed, wherein he expressed the desire to withdraw on April 1, 1920, at which time he would enter into an agreement for the sale of his interest. This written agreement is in direct conflict with the previous oral understanding and the present contention of the taxpayer that he withdrew from the partnership on December 31, 1919. The taxpayer contends that the written contract is merely an agreement to enter into a subsequent agreement to withdraw, and, as no such action was taken, it should be disregarded unless it be held that the withdrawal took place January 1, 1921. We can agree that the contract was not a sale of the partnership interest, but the subsequent events indicate to our minds that the sale and withdrawal of the taxpayer actually took place at the time designated therein without the execution of a formal agreement. He participated in the profits during the three months of 1920 to the extent of the so-called bonus; he drew nothing after April 1, 1920; and he received his first partial payment, on acount of his $200,000 selling price for his interest, on March 27, 1920, which was followed by additional payments during the next four days.
In holding that the taxpayer was a member of the partnership until April 1, 1920, the question arises whether, by the contract of December 5, 1919, and the facts in connection with the liquidation of his interest, the proportionate shares in the partnership earnings were not varied for the three months of 1920 from the equal division existing prior thereto. Under the terms of the written agreement, the taxpayer was to receive $200,000 for his interest, which amount was arrived at not only prior to the closing of the books at the time of his withdrawal, but before an estimate could even be made of the profits which would accrue to the partnership as of April 1, 1920. As it seemed to be the practice of the partners to leave the major part of the profits in the business, this provision of the contract indicates an agreement among the partners for a reapportionment of the partnership profits for the first three months of 1920, which is to our minds definitely established by the subsequent events. Although there was a book profit of $91,699.11 at the time of the taxpayer’s withdrawal, he did not receive, nor was he credited with, any por *169 tion thereof. When the partnership assets were transferred to the corporation, final payment of the contract price was made to him through the issuance of stock without any adjustments being made for the losses sustained by the partnership during the calendar year 1920. His only participation in the profits of the partnership for the first three months of 1920 was a percentage of the quarterly profits which the partners termed “ deferred salary.” From these facts we are led to the conclusion that such percentage represented his entire interest in the partnership during such period, and that the Commissioner was in error in including in his income one-third of the book profit from January 1,1920 to April 1, 1920.

Order of redetermination will be entered on 15 days' notice, under Rule 50.